**WO**                                    NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sophia Wilson, | No. CV-14-02407-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Stream Global Services-US Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Stream Global Services – AZ, Inc.'s Motion for Summary Judgment (Doc. 56, Mot.), to which *pro se* Plaintiff Sophia Wilson filed a Response (Doc. 61, Resp.), and Defendant filed a Reply (Doc. 69, Reply). For the reasons that follow, the Court finds that Plaintiff has not shown there is a genuine dispute as to any material fact necessary to prove her claims and Defendant is entitled to judgment as a matter of law. The Court will therefore grant Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

The following facts are undisputed unless otherwise indicated. Defendant is an outsourcing service company that operates call centers specializing in customer relationship management. On July 6, 2010, Plaintiff—an African American female—began working at Defendant's Colonnade call center as a Customer Support Professional ("CSP"). Plaintiff's job responsibilities were to service AT&T customers who expressed a desire to terminate their relationship with AT&T. Plaintiff reported to several rotating

Team Managers, who themselves reported to a single Operations Manager. During her employment, Plaintiff was supervised by numerous Team and Operations Managers.

At various times while employed by Defendant, the first occurring in January 2011, Plaintiff filed seven charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and its state counterpart, the Arizona Civil Rights Division. Plaintiff's EEOC actions alleged instances of sexual and racial harassment similar to those alleged here. The EEOC dismissed Plaintiff's charges due to lack of evidence and, when requested, provided Plaintiff with a right to sue letter. Plaintiff also made internal complaints to Defendant's Human Resources ("HR") department, General Counsel, legal department, and others, alleging similar harassment.

### A.    Undisputed Employment Actions

During the course of her employment, Plaintiff was given several, relatively routine, corrective actions or disciplinary notices, and made formal complaints regarding the alleged harassment and Defendant's employees' behavior. In April 2011, Plaintiff received a verbal warning after exhibiting recalcitrant behavior and refusing to accept feedback. On June 1, 2011, Plaintiff was issued a written warning for unprofessional verbal contact with her Team Manager. During 2012, Plaintiff was denied a requested promotion due to poor performance metrics. On June 5, 2012, Plaintiff's Team Manager issued Plaintiff a written warning for using her cell phone on the call center floor in violation of Defendant's policy. In February 2013, Plaintiff's performance ratings fell below Defendant's monthly goal requirements. In response, Defendant placed Plaintiff on a performance success plan ("PSP"), requiring Plaintiff to improve her metrics and partake in coaching and other training to facilitate the same. Plaintiff's performance metrics gradually improved and, in April 2013, Plaintiff met her goals and was removed from her PSP. Also in April 2013, Plaintiff reported that her Team Manager, as well as two other CSPs and another employee called her a "nigger." Defendant investigated the claim but was unable to corroborate Plaintiff's allegations. Shortly after, Plaintiff reported that her Team Manager called her a "bitch nigga." Again, Defendant

investigated the allegations but could not substantiate Plaintiff's claims. Defendant then warned Plaintiff about making false accusations. In 2014, Plaintiff was denied a request for unpaid vacation time, though she took the requested time regardless. On February 3, 2015, Defendant again placed Plaintiff on a PSP for failing to meet her requisite performance benchmarks. Plaintiff was later discharged, an event not at issue in this litigation.

### B.    Disputed Allegations

In addition to these undisputed occurrences, Plaintiff alleges that throughout her employment she was subjected to racial and sexual harassment, including widespread use of racial epitaphs—both generally and directed at Plaintiff—sexually explicit requests, and exposure to open sexual activity. In addition to the racially charged and sexually volatile allegations, Plaintiff contends that coworkers coughed and cleared their throats in her vicinity, spat on her and her headphones, made fun of her, and crinkled paper behind her head. Plaintiff alleges that the harassment occurred prior to her EEOC and HR complaints, but increased in severity and frequency after her grievances. Plaintiff alleges that she was deprived of certain employment benefits and otherwise treated disparately than those outside her protected classes, who had not complained, or were receptive to sexual advances. Plaintiff also alleges others were given extra monetary adjustments, higher scores in performance statistics, were permitted to arrive to work out of dress code, and allowed to keep their cellular phones at their desks. Plaintiff also claims she was denied assistance and training opportunities, provided misinformation about the steps she could take to improve her work, received a lack of awards and congratulatory communications, and that Defendant refused to alter her schedule to accommodate classwork (though it was later altered).

Plaintiff implicates a multitude of coworkers in her allegations, including fellow CSPs, Team Managers, Operations Managers, and various other superiors, supervisors, and executives. It is not overstating Plaintiff's claims to say that she alleges nearly every coworker she encountered during her employment was either party to, encouraged, or

condoned the sexual and racial harassment of Plaintiff. (*See* Third Amended Complaint ("TAC") ¶ 47 ("nearly or completely all of the management team at the [Defendant's] workplace has been involved with discrimination and harassment"); ¶ 14 (alleging Plaintiff was sexually harassed by up to 15 people a day); ¶ 16 (alleging that the workplace was "plagued with sexual acts all over the building" involving "several members of the management team").) It is unnecessary to address each employee or his or her conduct separately as each coworker allegedly took part in nearly identical behavior: wide-spread, pervasive, and condoned use of racial slurs, constant and unremitting unwanted sexual advances, brazen sexual conduct in common work areas, and spitting on the Plaintiff or her belongings. Plaintiff alleges that all complaints to management, HR, or the legal department were ignored, improperly dismissed, or that those supervisors explicitly sanctioned the behavior.

## II.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question

of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322). "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000).

*Pro se* litigants are not held to the same standard as admitted or bar licensed attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Pleadings by *pro se* litigants, regardless of deficiencies, should only be judged by function, not form. *Id.* Although the Court must construe the pleadings liberally, "*[p]ro se* litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("*[P]ro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

### III.   ANALYSIS

#### A.   Procedural Defects

At the outset, the Court notes that Plaintiff has failed to comply with numerous federal and local rules in her filings opposing summary judgment. While some might be expected—given her *pro se* status—at summary judgment, the elements Plaintiff must prove, and Plaintiff's burden of proof, are not relaxed simply because she is appearing without the assistance of counsel. *Jacobsen*, 790 F.2d at 1364; *see also Thomas v.*

*Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules") (citation omitted).

First, Plaintiff repeatedly violated Federal Rule of Civil Procedure 56(c) and LRCiv 56.1(e) in her Response. "Memoranda of law filed . . . in opposition to a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies . . . ." LRCiv 56.1(e). Here, Plaintiff's Response contains zero citation to her statement of facts, and scarce citation directly to the record.

Second, Plaintiff's Separate Statement of Facts itself is deficient. LRCiv 56.1(b) requires a party opposing summary judgment to provide, among other things: "statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed[.]" Rather than complying with that Rule, Plaintiff provided a Separate Statement of Facts consisting of 15 paragraphs, all seemingly to controvert Defendant's Statement of Facts, often with no citation to the record, and without any reference to a correspondingly numbered paragraph in Defendant's Statement of Facts. That Rule further provides that "[e]ach numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts." *Id.* As such, failure of the non-movant to comply with LRCiv 56.1(b) is grounds for the Court to disregard a controverting statement of facts and deem as true the moving party's separate statement of facts. Thus, the court could deem admitted Defendant's entire 199 paragraph Statement of Facts. However, given the phrase, "unless otherwise ordered," the Court "has the discretion, but is not required, to deem the uncontroverted facts admitted." *Baker v. D.A.R.A. II, Inc.*, No. CV-06-2887-PHX-LOA, 2008 WL 80350, at *3 (D. Ariz. Jan. 4, 2008).

Third, Plaintiff failed to comply with LRCiv 56.1(f), which requires that she provide excerpts of documents relied on for evidentiary support. Lastly, Plaintiff filed a sprawling personal affidavit "regarding" her Response which seems to serve as the sole source of additional statements of fact. To the degree it can serve as such, it provides absolutely no citation to admissible portions of the record. *See* LRCiv 56.1(b) (providing that each paragraph of the statement of facts shall refer to "the specific admissible portion of the record supporting the party's position."); *Mejia v. GMAC Mortg. LLC*, No. CV 11-01140-PHX-FJM, 2012 WL 786328, at *2 (D. Ariz. Mar. 9, 2012) (any disputed fact that plaintiff does not support with admissible evidence is insufficient to defeat summary judgment). Here, the affidavit *is* Plaintiff's position, with no support.

Even with these deficiencies, for the most part, the Court is able to discern if disputed facts exist. Where it cannot not easily do so, however, the Court does invoke LRCiv. 56.1(b)(1) and deems those facts admitted. *Szaley v. Pima Cnty.*, 371 Fed. App'x 734, 735 (9th Cir. 2010) (holding that district court "properly deemed Defendant's statement of facts to be true because Plaintiff failed to comply with Local Rule 56.1(b)" in Title VII action). Plaintiff's controverting of only 15 paragraphs of Defendant's Statement of Facts nearly demands that the Court deem admitted the remaining 184, at least where it is entirely unclear what evidentiary evidence may exist to contradict those facts. Proceeding in this way is consistent with the well accepted view that "a district court does not have a duty to search for evidence that would create a factual dispute." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029–31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers"). Nonetheless, the Court will attempt to consider the record before it in its entirety despite Plaintiff's failure to comply with the applicable rules. However, "[the nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the

nonmoving party fails to discharge that burden—for example by remaining silent—its opportunity is waived and its case wagered." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992); *Taylor v. AFS Techs., Inc.*, No. CV-09-2567-PHX-DGC, 2011 WL 1237609, at *6 (D. Ariz. Apr. 4, 2011) (the Court relies on "'the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'") (citing Fed. R. Civ. P. 56(e)(2)). Even then, only those assertions in the Response that have evidentiary support will be considered. Fed. R. Civ. P. 56(c)(1)(A) ("a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ").

## B.      Title VII – Gender and Racial Discrimination (Counts I-II)

Plaintiff claims she was discriminated against because of her gender and race, in violation of Title VII. (TAC ¶¶ 68-73.) Under Title VII, an employer may not "discriminate against an individual with respect to [their] . . . terms, conditions, or privileges of employment" because of their sex or race. 42 U.S.C. § 2000e–2(a). "This provision makes 'disparate treatment' based on sex [or race] a violation of federal law." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061–62 (9th Cir. 2002). Title VII is also violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). Plaintiff's claims include allegations of both disparate treatment and hostile environment, and the Court will analyze each in turn.

### 1.      Disparate Treatment

In order to show disparate treatment under Title VII, Plaintiff must first establish a *prima facie* case of discrimination as the United States Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Specifically, [Plaintiff] must show that (1) [Plaintiff] belongs to a protected class; (2) [Plaintiff] was qualified for the position; (3) [Plaintiff] was subjected to an adverse employment action; and (4) similarly

1   situated [members of different race or sex] were treated more favorably . . . ." *Villiarimo*,

2   281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802).

3       "If the plaintiff establishes a *prima facie* case, the burden of production—but not

4   persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory

5   reason for the challenged action. . . . If the employer does so, the plaintiff must show that

6   the articulated reason is pretextual 'either directly by persuading the court that a

7   discriminatory reason more likely motivated the employer or indirectly by showing that

8   the employer's proffered explanation is unworthy of credence.'" *Id*. (internal citations

9   and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate

10  pretext, but such evidence must be both specific and substantial. *Id*. At the last step, if the

11  plaintiff can show pretext, the only remaining issue is whether discrimination occurred or

12  not. *Id*.

13      Defendant does not contest that Plaintiff belongs to a protected class or that she

14  was qualified for the position. (Mot. at 4-6.) Instead, Defendant moves for summary

15  judgment on the basis that Plaintiff did not, as a matter of law, suffer any adverse

16  employment action, and that Plaintiff cannot demonstrate that she was treated less

17  favorably than similarly situated employees outside of her protected class. (Mot. at 4-6.)

18      The Ninth Circuit has defined the term "adverse employment action" broadly,

19  including a "wide array of disadvantageous changes in the workplace." *See Fonseca v.

20  Sysco Food Servs. of Arizona*, 374 F.3d 840, 847 (9th Cir. 2004); *Ray v. Henderson*, 217

21  F.3d 1234, 1241 (9th Cir. 2000). Employment actions that have been recognized as

22  adverse by the Ninth Circuit include an employer's action that negatively affects its

23  employee's compensation, *Little v. Wendermere Relocation, Inc.*, 301 F.3d 958, 970 (9th

24  Cir. 2002), an employer issuing a warning letter or negative review if undeserved,

25  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987), and transfers of job duties, *St.

26  John v. Employment Dev. Dept.*, 642 F.2d 273, 274 (9th Cir. 1981).

27      Here, Plaintiff has failed to allege any activity that has negatively affected her

28  compensation. Nor has Plaintiff alleged that she experienced a transfer of job duties, or

was deprived of any other tangible employment opportunity. Further, while the allegations of a pervasive, vitriolic workplace environment and Plaintiff's treatment therein may substantiate her claims of adverse employment actions, as discussed below, those allegations are unsupported by the record. While Plaintiff does allege she was denied a promotion, Defendant provides ample, unchallenged, and uncontroverted evidence that the lack of promotion, as well as the corrective or disciplinary actions, was merit based. (Defendant's Statement of Facts ("DSOF" ¶¶ 105-17, 116-19, 122-26, 163-64.)

What remains in Plaintiff's Third Amended Complaint and Response is a plethora of actions that Plaintiff found to be subjectively offensive, such as allegations that she was deprived of receiving logical and clear instructions, that she was yelled at, that the code of conduct (such as cell phone use, dress code, and scheduling) was disparately applied to her, that she was constantly scrutinized, that she was disciplined for rule violations, and that she was generally treated less preferentially than other employees. (*See generally* TAC; Resp.) Even taken in the aggregate, the actions that Plaintiff alleges do not establish that she suffered an adverse employment action. Indeed, Plaintiff seems to explicitly admit this at various points. (Reply at 8.) While Plaintiff's Third Amended Complaint and Response demonstrate that her subjective experience has been painful and difficult, allegations of unfriendly or rude behavior, and/or that she experienced a non-ideal work environment are insufficient to establish a *prima facie* case of discrimination under Title VII. *See e.g., Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999). As noted by the Supreme Court, "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998). Therefore, judging Plaintiff's allegations of disparate treatment against the Ninth Circuit's findings of disparate treatment, the Court finds that Plaintiff has failed to demonstrate that she suffered an adverse employment action, and therefore, she has failed to establish a *prima facie* case of disparate treatment.

Lacking a *prima facie* case of race or gender discrimination, the Court need not complete the remainder of the *McDonnell Douglas* burden shifting analysis. However, even were the undisputed activities enough to qualify as an adverse employment action, Plaintiff does not present a comparator of any similarly situated individual receiving more preferential treatment, nor does she provide circumstantial evidence giving rise to an inference of discrimination regarding corrective actions, PSPs, or lack of promotion. Plaintiff does make allegations regarding disparate treatment of employees who welcomed sexual advances (*e.g.*, TAC ¶ 11, Resp. at 4-5), but produces no record or evidentiary support for those allegations, nor does she provide any evidence regarding the qualifications of those applicants.  Further, Plaintiff would also fail to meet her burden to show that Defendant's proffered reason for denying promotion or the other corrective actions were a pretext for discrimination. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004). Defendant has provided numerous legitimate, non-retaliatory, unchallenged reasons for its actions (DSOF ¶¶ 105-17, 116-19, 122-26, 163-64), which Plaintiff has failed to rebut (Reply at 9), and Plaintiff "bears the ultimate burden of showing defendant's stated reasons to be merely pretextual[.]" *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802–04). Plaintiff's unsubstantiated assertions to the contrary (some of which are outlandish) fail to establish that Defendant's actions were a pretext. And all fall short of the specific and substantial evidence that would be required to defeat summary judgment. *Villiarimo*, 281 F.3d at 1062. Finally, and as discussed further below, Plaintiff cannot raise a genuine issue of material fact as to whether any other alleged discrimination occurred.

The Court finds that Plaintiff's scant evidence has failed to raise a genuine issue of material fact as to whether Defendant subjected Plaintiff to adverse employment actions. The undisputed workplace occurrences, with no evidentiary support for anything more, do not suffice. Nor has she raised a genuine issue of material fact that comparators were not subject to the same actions or that actions against her were pretextual. Accordingly,

1    the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's Title VII

2    claim for disparate treatment.

3    **2.      Hostile Work Environment**

4        Plaintiff also claims that the harassment was so pervasive that it created hostile

5    work environment. (*E.g.,* TAC ¶ 9.) To establish a *prima facie* case for a hostile-work

6    environment claim, Plaintiff must raise a triable issue of fact as to whether (1) Defendant

7    subjected her to verbal or physical conduct based on her race; (2) the conduct was

8    unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

9    conditions of her employment and create an abusive working environment. *Surrell v.*

10   *California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). "Allegations of a

11   racially hostile workplace must be assessed from the perspective of a reasonable person

12   belonging to the racial . . . group of the plaintiff." *Id.* Under Title VII, the Court reviews

13   "'[h]ostile work environment claims based on racial harassment . . . under the same

14   standard as those based on sexual harassment.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d

15   1103, 1115 (9th Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

16   101, 116 n.10 (2002)). Thus, the Court will analyze them together.

17       Plaintiff has alleged ubiquitous racial slurs and sexual interactions, as well as, in

18   essence, sexual *quid pro quo*. (*E.g.*, TAC ¶¶ 9, 11, 13-14, 31.) In the workplace, it is

19   without doubt that the "use of the word 'nigger' is highly offensive and demeaning,

20   evoking a history of racial violence, brutality, and subordination." *Id.* at 1116. "'Perhaps

21   no single act can more quickly alter the conditions of employment and create an abusive

22   working environment than the use of . . . 'nigger' by a supervisor in the presence of his

23   subordinates.'" *Id.* (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675

24   (7th Cir. 1993)). A plaintiff may also be able to prove hostile work environment, by

25   establishing that "employment opportunities were extended to less qualified female co-

26   workers who responded to sexual overtures from work supervisors" or that Plaintiff "was

27   denied any benefits because she spurned a supervisor's sexual advances." *Candelore v.*

28   *Clark Cty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992).

1    While Plaintiff's claims regarding universal use of racial slurs, exhibitionist sexual

2    behavior, and battery via saliva, if true, would support her allegations that such an

3    environment existed, there is no evidentiary support for such claims. *See Latham v. West*

4    *Corp.*, No. CV–08–2323–PHX–DGC, 2010 WL 716386, at *6 (D. Ariz. Feb. 25, 2010)

5    (harassment claims cannot be based on racial or sexual comments substantiated by no

6    evidence). Accordingly, Defendant moves for summary judgment on the basis that

7    Plaintiff has failed to provide any evidence that she was subjected to racial or sexual

8    harassment and that the evidence presented is so one-sided that Defendant must prevail.

9    (Mot. at 4-6.) For the following various reasons, the Court agrees.

10    To start, Defendant provides evidence that no witness has corroborated any of the

11    events or occurrences alleging racial or sexual harassment and that no identified

12    witnesses can testify as to the accuracy of Plaintiff's claims. (DSOF ¶¶ 85-91, 95-104,

13    147, 152, 173-76.) While Plaintiff's Response contains scarce and fleeting citations to

14    evidence in the record, those citations are often to video or photographic evidence which

15    bear no resemblance to her characterization of them. *See Bovarie v. Schwarzenegger*, No.

16    08CV1661 LAB NLS, 2011 WL 7468597, at *17 (S.D. Cal. Sept. 21, 2011) ("Plaintiff's

17    own opinion and skewed characterization of events does not suffice to create a genuine

18    issue of material fact."); *Williams v. Palmquist*, No. C08-1180-RAJ-JPD, 2010 WL

19    3063188, at *9 (W.D. Wash. June 9, 2010) (holding that plaintiff's statement of fact

20    mischaracterizing a video which did not exhibit what plaintiff purported it to could not

21    preclude summary judgment). Indeed, in most cases Plaintiff has been unable to identify

22    the alleged conduct within the recording or admitted that the recordings do not

23    demonstrate racial comments or sexual conduct as alleged. (DSOF ¶¶ 67, 71, 74, 78-79.)

24    While Mr. Humphrey's affidavit does allege sexual conduct between employees

25    and racial epitaphs, it is conclusory, sweeping, and fails to allege a single particular

26    instance of either—much less one directed at Plaintiff. Further, it is uncontroverted that

27    Mr. Humphrey worked in a different part of the call center, that his affidavit reflects the

28    entirety of his knowledge, and that he did not witness Plaintiff being sexually or racially

- 13 -

harassed. (DSOF ¶¶ 86, 90-91.) Other allegations that may give credence to her claims, for which discovery could produce evidence of, are the various purported dismissals of coworkers for unabashed sexual conduct. (*E.g.*, TAC ¶ 29 (alleging that a former manager was terminated for fraternization); ¶ 35 (alleging that another manager was terminated for having sexual relations in the bathroom); ¶ 39 (alleging that another coworker was terminated after receiving oral sex from another agent).) However, as with most of Plaintiff's allegations, no evidence of such conduct, or the subsequent terminations, exists in the record. This leaves only Plaintiff's affidavit in support of her Response.

While Plaintiff's affidavit, if true, would substantiate her hostile environment claim, it is completely devoid of citation to the record or corroboration. This Court has refused to find a "genuine issue" of material fact where the only evidence presented is "uncorroborated and self-serving" testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Villiarimo*, 281 F.3d at 1061 ("uncorroborated and self-serving testimony," without more, will not create a genuine issue of material fact precluding summary judgment); *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989) (discussing cases in which self-serving testimony uncorroborated by other evidence did not create a genuine issue of material fact); *Zolnierz v. Arpaio*, No. CV-11-146-PHX-GMS, 2012 WL 1432537, at *2 (D. Ariz. Apr. 25, 2012) (summary judgement may be granted when the non-moving party can produce only "uncorroborated and self-serving" statements that lack an evidentiary basis) (internal citation omitted).

The Court also notes that inconsistencies exist between Plaintiff's affidavit, Complaint, Statement of Facts, and the other evidence of record. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Indeed, the record is replete with contradictions between Plaintiff's testimony, Complaint, and subsequent filings. *Compare, e.g.*, Plaintiff's Separate Statement of Facts ("PSOF") ¶ 15 *with* DSOF, Ex. 2 at 81:21-82:4, 82:21-23.) In so noting, the Court is mindful that, at the summary

judgment stage, the district court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Still, in determining whether a genuine issue of material fact exists based on Plaintiff's assertions, the Court is left with Plaintiff's statements that may create such an issue, and Plaintiff's statements that assuredly do not.

In addition to an almost complete lack of evidentiary support, Plaintiff's allegations—while not factually impossible—are highly improbable, particularly when no other witnesses could corroborate a single allegation supportive of Plaintiff's claims.[1] Plaintiff's attestations of wide-spread, robust, constant, and continuous harassment are particularly questionable as, if any are to be believed, the witnesses would be inherently numerous. Nevertheless, Plaintiff admits that she does not know whether she could identify a single witness that would testify anyone called her the racial slurs she has alleged. (DSOF ¶¶ 102, 104.) Nor has any evidence been produced that would substantiate rampant sexual harassment, omnipresent sexual *quid pro quo*, or any other widespread gender discrimination. Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, in order to place this case before a jury Plaintiff had to "present more persuasive evidence than would otherwise be necessary" in order to survive summary judgment. *California*

---

[1] The Court notes that Defendant's Statement of Facts attempts to present evidence concerning Plaintiff's credibility and the believability of her allegations by pointing to similar or identical allegations Plaintiff has made (in court or otherwise) against Phoenix College and Maricopa Community College District, EEOC employees, former employers (U-Haul, KB Toys, Bank of America), McDonalds, multiple neighbors, customers whom she interacted with while working for Defendant, as well as Plaintiff's past criminal record, psychological diagnoses, and psychotic incidents—particularly those in which Plaintiff experiences false sensatory stimuli similar to those allegedly experienced here. (DSOF ¶¶ 25-46, 177-99.) Defendants also assert facts stemming from her Rule 35 independent psychological examination in which Plaintiff showed signs of hallucination, cognitive impairment, mood disorder, psychosis, and delusional thinking. (DSOF ¶¶ 55-60.) While Plaintiff's mental health may be relevant to a fact-finder weighing credibility, they are beyond the purview of the Court at the summary judgment stage. Accordingly, the Court gives no weight to these facts or allegations in resolving Defendant's current Motion.

*Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. 574); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (noting that improbable allegations may properly be disposed of on summary judgment); *In re Chavin*, 150 F.3d 726, 728–29 (7th Cir. 1998) (holding that the *Matsushita* rule requiring a heightened burden for implausible claims is not limited to claims of "physical impossibility"). The Court remains mindful that it may not make "[c]redibility determinations or weigh the evidence" at this stage in the proceedings, and it does not do so here, *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000), "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the trial court has at least some discretion to determine whether the respondent's claim is "implausible." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (citations omitted). Regardless of the burden, Plaintiff has failed to meet it. *Johnson*, 883 F.2d at 128 ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.")

Instead, the Court is left with the corrective actions, performance success plans, failure to train, and failure to grant requested time off. (TAC ¶¶ 11, 19, 24, 43, 48.) These cannot serve as the basis for a hostile work environment. These actions—the only for which evidence exists of their occurrence—do not form the basis for a claim showing pervasive harassment, and, as Defendant notes, Plaintiff testified that she did not attribute some of these to her race. (Mot. at 8 (citing DSOF ¶¶ 109, 115, 120, 133, 143, 150, 158, 167).) Other uncorroborated allegations—such as coughing, clearing one's throat, or crinkling paper in the Plaintiff's vicinity—may be subjectively offensive to Plaintiff, but, again, do not rise to the level necessary to create Title VII liability. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth 'a general civility code for the American workplace.'") (internal quotation omitted).

1    Just as with her disparate treatment claim, Plaintiff has failed to make out a *prima*

2    *facie* case, as she cannot reach the first step. While, as alleged, the comments were

3    pervasive enough to alter the conditions of employment, Plaintiff has failed to educe any

4    evidence that the conduct actually occurred. Accordingly, the Court will grant summary

5    judgment as to Plaintiff's hostile environment claim under Title VII.

6    **B.      Retaliation Under § 1981 (Count IV)**

7    Plaintiff also claims that Defendant retaliated against her in violation of § 1981.

8    (TAC ¶¶ 77-78.) To sustain her retaliation claim, Plaintiff must show: "(1) Plaintiff

9    engaged in a protected activity; (2) Plaintiff's employer subjected [her] to an adverse

10   employment action; and (3) a causal link exists between the protected activity and the

11   adverse employment action." *Ray*, 217 F.3d at 1240; *see also Scotts v. City of Phoenix*,

12   No. CV-09-0875-PHX-JAT, 2011 WL 3159166, at *3 n.3 (D. Ariz. July 26, 2011)

13   ("Claims . . . under Title VII and Section 1981 are parallel because both require proof of

14   intentional discrimination. The same standards are used to prove both claims, and facts

15   sufficient to give rise to one are sufficient to give rise to the other.") (internal citations

16   omitted)).

17   An employee engages in a "protected activity" when the employee complains

18   about or protests conduct that the employee reasonably believes constitutes an unlawful

19   employment practice. *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir.

20   1994). For the purposes of a retaliation claim, an adverse employment action is an action

21   that "is reasonably likely to deter employees from engaging in protected activity." *Ray*,

22   217 F.3d at 1243. For example, giving undeserved, artificially low performance ratings

23   constitutes an adverse employment action, *Yartzoff*, 809 F.2d at 1376; however, "mere

24   ostracism" by co-workers does not, *Strother v. Southern California Permanente Med.*

25   *Group*, 79 F.3d 859, 869 (9th Cir. 1996). Plaintiff must also prove that any adverse

26   actions were caused by her protected activity. The Supreme Court has averred that

27   "retaliation claims must be proved according to traditional principles of but-for

28   causation," which "requires proof that the unlawful retaliation would not have occurred

1   in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas*
2   *S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

3   **1.   Protected Activity**

4   At the outset, the Court notes that § 1981 is regularly applied in the context of
5   racial discrimination and retaliation. But Courts have declined to extend § 1981 into the
6   context of gender discrimination. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976);
7   *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986) ("It is clear that section 1981 does not
8   provide a cause of action based on sex discrimination."); *Bello v. Howard Univ.*, 898 F.
9   Supp. 2d 213, 219 (D.D.C. 2012) ("42 U.S.C. § 1981 is narrowly addressed to racial
10  discrimination and is in no way directed to sex or gender discrimination."). Therefore,
11  Plaintiff's 2011 verbal counseling and written warning in which Plaintiff complained
12  about sex discrimination (DSOF ¶¶ 108, 115) cannot serve as the basis for protected
13  activity. However, there is no dispute that Plaintiff's complaints regarding any racially
14  motivated harassment constitutes protected activity under the statute. What remains are
15  Plaintiff's EEOC claims and other alleged informal, internal complaints.

16  **2.   Adverse Action**

17  Defendant does not dispute that the unquestioned employment actions Plaintiff
18  complains of, if proven to be solely in response to Plaintiff's complaints, would qualify
19  as adverse action. The Court agrees as such actions would deter further protected activity.

20  **3.   Causation**

21  Defendant moves for summary judgment on the grounds that Plaintiff has failed to
22  meet her burden to show that "but-for" her complaints of racial discrimination, she would
23  not have been subject to the purported adverse actions that give rise to her claim. (Mot. at
24  12-15.)

25  Defendant first contends that, apart from two managers, Plaintiff provides no
26  evidence that the Team or Operation Managers responsible for the adverse actions had
27  knowledge of a specific race discrimination complaint. (Mot. 12 (citing DSOF ¶¶ 129,
28  151-52).) The Court agrees, and Plaintiff has not challenged Defendant's position or

produced evidence to the contrary. (*E.g.,* TAC ¶¶ 9-10, 14, 29.) Further, Defendant contends that even were the managers aware, Plaintiff has failed to present "but-for" evidence, particularly because proximity in time is of limited value here. *Shaninga v. St. Luke's Med. Ctr. LP*, No. CV-14-02475-PHX-GMS, 2016 WL 1408289, at *1 (D. Ariz. Apr. 11, 2016) (holding that while proximity in time may be relevant, it cannot form the sole basis for causation). The Court also agrees. Plaintiff's constant complaints make it nearly impossible for timing to prove causation when Plaintiff was making continuous grievances. *See Dilletoso v. Potter*, No. CV04-0566-PHX-NVW, 2006 WL 197146 at *13 (D. Ariz. Jan. 25, 2006) ("[P]roximity in time will no longer effectively connote increased probability of interconnectedness between the adverse action and the protected activity" when discrimination complaints are routinely made by Plaintiff); (DSOF ¶ 168 (Plaintiff stated she was harassed every single day of her five-year employment, sometimes multiple times per day, by each of her ten Team Managers and five Operation Managers); ¶ 169 (alleging that she was subject to daily sexual advances and open sexual behavior; ¶ 170 (alleging that she was spit on every day); (TAC ¶ 11 (alleging that Plaintiff reported her allegations on a weekly basis); ¶ 35 (alleging that Plaintiff reported sexual activity in the bathroom on a daily basis); ¶ 13 (alleging that Plaintiff reported harassment "literally every day between January 2011 and June 2012").) While Plaintiff's statements in her affidavit, Complaint, and Response claim that her complaints exacerbated already existing harassment, these statements regarding causation are speculative, conclusory, and do not raise a triable issue of fact. *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1061 (9th Cir. 2011). Most importantly, Plaintiff has not provided sufficient evidence to rebut Defendant's legitimate reasons for the substantiated employment actions, which are many. (DSOF ¶¶ 105-17, 116-119, 122-126, 163-164.)

With regard to causation, Plaintiff failed to create a genuine issue as to any material fact support the necessary link between the adverse actions and Plaintiff's protected activity. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) ("Summary judgment is not appropriate" when based on the record, "a *reasonable*

jury could not conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's" protected activity) (emphasis added). No reasonable jury could conclude that but-for her protected activity, Plaintiff would not have been subject to corrective actions and performance success plans, as there is no admissible evidence that could reasonably support her claims and no evidence has been put forth of further pervasive conduct. The Court will grant Defendant's Motion regarding Plaintiff's retaliation claim for failure to create a genuine issue of material fact on causation.

### C.   Intentional Infliction of Emotional Distress (Count V)

To make out a claim for IIED under Arizona law, the "plaintiff must demonstrate that: (1) the conduct by defendant was 'extreme' and 'outrageous'; (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) severe emotional distress actually resulted from the defendant's conduct." *Bodett*, 366 F.3d at 746 (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

To be extreme and outrageous, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969) (quoting Restatement (Second) of Torts, § 46 cmt. D (1965)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980) (quoting Restatement (Second) of Torts, § 46 cmt. H (1977)).

First, and to the degree Plaintiff seeks damages based on the alleged adverse employment actions, rather than the purported racially and sexually combustible work environment, Arizona cases have held that a defendant's conduct is not sufficiently outrageous as a matter of law where the conduct is "premised upon actions that are routine in the employment context, such as hiring, firing, and promoting, even when

taken for an unlawful purpose, or, in which the employer's actions, even if callous, were motivated by a legitimate business purpose." *Brands v. Lakeside Fire Dist.*, No. CV 08–8143–PHX–NVW, 2010 WL 2079712 *8 (D. Ariz. 2010); *see also Bodett*, 366 F.3d at 747 (9th Cir. 2004) (concerning accusations of employee misconduct); *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486 (Ariz. Ct. App. 1995) (concerning employer who reduced employee's salary); *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for . . ." IIED.) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)); *Mintz*, 905 P.2d at 563 ("[F]ailure to promote [the plaintiff] does not go beyond all possible bounds of decency, even if it was motivated by [] discrimination or retaliation."). Plaintiff's dismissal is not at issue in this action and the alleged adverse employment actions fall far below those alleged in the above precedent. For example, the court in *Wallace v. Casa Grande Union High School District Number 82 Board of Governors* found that the combination of a reduction in salary, nonrenewal of a contract, unfairly singling the plaintiff out for discipline on performance grounds, threatening the plaintiff with termination, and the defendant's statements to the plaintiff that "nobody likes you" and "you piss people off" did not constitute IIED. 909 P.2d 486, 495 (Ariz. Ct. App. 1995). None of the undisputed facts can sustain a claim for anything more than standard employment decisions and the corrective actions, PSPs, and other substantiated allegations of workplace reprimands are not "atrocious and utterly intolerable in a civilized community." *See Cluff*, 460 P.2d at 668.

Second, Plaintiff's claims regarding open sexual conduct, pervasive sexual and racial harassment, and physical battery, on the other hand, are undoubtedly extreme, outrageous, and outside the bounds of decency. However, as the Court has already stated, Plaintiff is unable to provide any factual foundation for these claims. Plaintiff's unsubstantiated and contradictory allegations cannot serve as the sole factual basis for her

1    IIED claim either, particularly when the claims are so implausible and Plaintiff provides

2    no corroboration.

3         Because Plaintiff can provide no facts regarding the incredibly hostile work

4    environment alleged, she too cannot meet her burden as to Defendant's intent to cause

5    severe emotional distress. "An intention to cause severe emotional distress exists when

6    the act is done for the purpose of causing the distress or with knowledge on the part of the

7    actor that severe emotional distress is substantially certain to be produced by his

8    conduct." *Savage v. Boies*, 272 P.2d 349, 351 (Ariz. 1954). The undisputed employment

9    actions unquestionably fall outside that scope.

10        Plaintiff also cannot show the emotional distress caused a "severely disabling

11   emotional response." *Pankratz v. Willis*, 744 P.2d 1182, 1190 (Ariz. Ct. App. 1987).

12   Severe emotional distress manifests in physical ailments. *See id.* at 1191 (plaintiff

13   suffered anger and depression along with headaches and hemorrhoids); *Ford*, 734 P.2d at

14   583 (plaintiff suffered high blood pressure, a nervous tic, chest pains, rapid breathing,

15   fatigue, and attempted suicide); *Vincente v. Barnett*, 415 F. App'x 767, 767 (9th Cir.

16   2011) (plaintiffs suffered anxiety, depression, insomnia and a psychological expert

17   diagnosed them with post-traumatic stress disorder and other emotional disorders); *Spratt*

18   *v. N. Automotive Corp.*, 958 F. Supp. 456, 461 (D. Ariz. 1996) ("crying, being stressed

19   and upset, and having headaches" is not sufficient for severe emotional distress). Plaintiff

20   alleges "injury from humiliation, trauma, extreme stress, depression[,] and physical and

21   mental pain and anguish" (TAC ¶ 65), but does not allege that the emotional response

22   was disabling or manifested in a physical ailment, as required. Further, it is impossible to

23   determine whether the effects of such emotional distress, if any, are attributable to

24   Defendant's conduct. As admitted, Defendant was only one among numerous non-parties

25   that allegedly subjected Plaintiff to emotional distress through similar conduct, and the

26   effects of such distress were apparently present both before and after Plaintiff's

27   employment with Defendant.

28

"In light of the extremely high burden of proof for demonstrating intentional infliction of emotional distress in Arizona," no reasonable jury could find Defendant's action in reprimanding or placing standard performance benchmarks on Plaintiff is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *See Bodett*, 366 F.3d at 747; *Johnson v. McDonald*, 3 P.3d 1075 (Ariz. Ct. App. 1999). Because no genuine issue of fact exists as to anything more than the employment actions, the Court will grant summary judgment as to Plaintiff's IIED claims.

## III. CONCLUSION

Despite the Plaintiff's lack of citation and compliance with local rules, the Court has searched the entirety of the record endeavoring to discern the existence of a triable issue. Having found none, even when viewing the record in the light most favorable to the Plaintiff, the Court finds Plaintiff's claims untenable, with no genuine issue of material fact as to any of the vital elements of her claims. At bottom, all of Plaintiff's claims fail for one reason: after the Defendant met its initial burden of demonstrating the absence of a genuine issue of material fact, *see Celotex*, 477 U.S. 317, Plaintiff failed entirely to counter with a showing of evidence sufficient to provide a reasonable jury with a basis to rule in her favor. *See Anderson*, 477 U.S. at 249-50, 254. Plaintiff's evidence to substantiate her claims consists largely of unauthenticated and inadmissible documents, inadmissible hearsay, unsupported and improbable inferences, and unsubstantiated testimony and attestations.

Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. A court need not give credence to "mere allegations" nor draw inferences where they are implausible or not supported by "specific facts," *Anderson*, 477 U.S. at 249, and the Court will not do so here. Plaintiff has failed to

present sufficient evidence such that a rational juror could find in her favor. *Wallis v. J.R. Simplot, Co.*, 26 F.3d 885, 892 (9th Cir. 1994).

The undisputed employment related actions cannot serve as a basis for either of Plaintiff's Title VII claims, as Defendant has put forth unrebutted reasons for such actions and Plaintiff has failed to provide any evidence of pretext, or Plaintiff's § 1981 retaliation claim for the same reasons. Nor can those employment reprimands serve a basis for Plaintiff's IIED claims.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 56) as to all of Plaintiff's claims.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 1st day of December, 2016.

Honorable John J. Tuchi
United States District Judge